UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

GEORGE STANLEY ROLAND, III          CIVIL ACTION NO. 06-cv-1757

VERSUS                              JUDGE HICKS

WARDEN OF DAVID WADE                MAGISTRATE JUDGE HORNSBY
CORRECTIONAL CENTER

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury found George Stanley Roland, III ("Petitioner") guilty of one count of unauthorized entry of an inhabited dwelling. It acquitted Petitioner of a second count. Petitioner was adjudicated a second felony offender, and he received an enhanced sentence of seven years. Petitioner filed a direct appeal. State v. Roland, 850 So.2d 738 (La. App. 2d Cir. 2003), writ denied, 865 So.2d 692 (La. 2004). He also pursued a post-conviction application. He now seeks federal habeas corpus relief. It is recommended, for the reasons set forth below, that the petition be denied.

**Facts**

The state appellate court set forth the facts that led to the conviction. Neither Petitioner nor the State seriously dispute the general recitation of the facts, other than as discussed below with regard to the sufficiency of the evidence. Accordingly, the summary of the facts set forth below is based largely upon the state appellate court's decision.

For several years, Petitioner and Sherrie Tillman had an ongoing, rocky common-law relationship, producing one child. From time to time, Petitioner would move in and out of Tillman's home on 85th Street in Shreveport. In early 2001, the couple broke up once again, and Petitioner left Tillman's home, while leaving clothing and other personal effects. In May 2001, Tillman obtained a restraining order that prohibited Petitioner from going near her or her home. Tillman continued to be concerned about Petitioner coming back into her home, and she enlisted the help of a friend, Michael Anderson, to stay in her home and keep watch on it.

Michael Anderson testified that on August 18, 2001, Tillman had gone to a funeral, leaving Anderson in the house alone. Anderson heard a noise in another room, investigated, and discovered Petitioner in the house. Anderson called the police and told Petitioner to leave. Petitioner did so before the police arrived.

Anderson testified that several days later, on September 3, 2001, Petitioner came through the front door of Tillman's house, armed with a hammer, while Tillman and Anderson were both inside the house. Petitioner hit Anderson on the back of the head. Petitioner was arrested soon afterward.

Petitioner testified to a different scenario. He said that he went to Tillman's home at the time of the first incident only because he was homeless and had nowhere to go, needing a place to rest. He knocked on the door, and when he received no answer, he crawled through

a window into the house. He talked to Anderson, then left the home without incident. (Petitioner was convicted in connection with this first charged incident.)

Petitioner also had a different account of the second incident. He said that Tillman let him into the house, but Tillman and Anderson started a fight with Petitioner. Shortly thereafter, Petitioner was arrested. Petitioner admitted to the police that he entered the home on the two occasions. (Petitioner was acquitted in connection with this second charged incident.)

**Sufficiency of the Evidence**

Petitioner was charged with violating La.R.S. 14:62.3, which provides that unauthorized entry of an inhabited dwelling is "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." Petitioner argues, as he did on direct appeal, that the prosecution did not present any evidence to prove that he was not the legal and lawful owner of the house.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. The Jackson inquiry "does not focus on

a window into the house. He talked to Anderson, then left the home without incident. (Petitioner was convicted in connection with this first charged incident.)

Petitioner also had a different account of the second incident. He said that Tillman let him into the house, but Tillman and Anderson started a fight with Petitioner. Shortly thereafter, Petitioner was arrested. Petitioner admitted to the police that he entered the home on the two occasions. (Petitioner was acquitted in connection with this second charged incident.)

**Sufficiency of the Evidence**

Petitioner was charged with violating La.R.S. 14:62.3, which provides that unauthorized entry of an inhabited dwelling is "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." Petitioner argues, as he did on direct appeal, that the prosecution did not present any evidence to prove that he was not the legal and lawful owner of the house.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. The Jackson inquiry "does not focus on

whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The prosecutor did not ask Ms. Tillman on direct examination who owned the house. Defense counsel asked: "Is that your house or is it a house that you are renting or buying?" Tillman answered: "Buying. It is my house." She added that the house was "paid," and counsel asked again, "Is it your house?" Tillman answered, "Yes." Tr. 200-01. Petitioner testified at length. Frequent references were made to Tillman's house, but Petitioner never asserted that he or anyone else owned the house. Tr. 230-48.

The state appellate court, citing the proper Jackson standard, rejected this argument. Petitioner had filed pro se submissions and argued on appeal that he had some type of ownership claim to the home and that Tillman took it away from him by "putting the home in her name." The appellate court referred to the trial testimony to the effect that Tillman owned the home and noted the absence of record evidence to rebut the testimony that Tillman owned the home. The court also correctly pointed out that the operative fact is not who owns the home, but that the home was not owned by Petitioner. State v. Roland, 850 So.2d at 742-43.

The Louisiana appellate court applied the Jackson standard on Petitioner's direct appeal, so its decision was not "contrary to clearly established Federal law," and Petitioner can obtain habeas relief only if the State court's decision was an "unreasonable application"

of Jackson. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000); Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the state court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the state court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

The state court decision was based on the record evidence and reached a sound conclusion. Petitioner has done no more than repeat his same rejected argument, and there is no factual basis to support it. The state court's decision was a reasonable application of Jackson, so habeas relief is not permitted on this claim.

**Taped Statement**

Detective Kevin Goodwin testified at trial that he conducted a recorded interview of Petitioner about the entries into Tillman's home. The tape recording was played for the jury, and Goodwin testified that it contained an accurate reflection of the interview. Tr. 224-27.

The statement included Petitioner's explanation of the events, and it was similar to the testimony that Petitioner later gave at trial. Tr. 288-305.

Petitioner argued in a pro se motion for new trial that the recorded statement was allowed into evidence but "was damage from portions being deleted and the deleted segment of verbal mentions could very well have been the evidence needed to restore defendant to his liberty." Tr. 328. The trial court denied this and other claims presented in the motion because they were based on nothing more than conclusory allegations. Tr. 351. The state appellate court and Supreme Court of Louisiana denied writ applications without specific comment on this issue. Tr. 2200, 2202, 2473.

Petitioner's submission to this court merely states that the taped statement "was not offered in entirety as required by law." Petitioner argued in his state filings that there was a "skip" in the tape and that the tape had been "altered in certain areas" to delete information that was "evidence enough to set the defendant free." Tr. 611, 614.

Petitioner was given the opportunity to testify at trial about his contention that Detective Goodwin shut the recording off as Petitioner was about to say something. Petitioner testified that he was about to tell Goodwin that he had called Tillman on her cell phone and asked if he could go inside her house to rest, and she allegedly said, "you can go in, but go in at your own risk." Petitioner said this call preceded his first entry into the house. Tr. 239. Petitioner had earlier testified that he interpreted the statement to mean that Petitioner was at risk of getting in trouble because of a temporary restraining order against

him being on the property. Tr. 234. But when Petitioner saw Anderson inside, he then believed that was the risk about which Tillman had warned. Tr. 235.

Petitioner made voluminous filings in the state court, and he has even received an evidentiary hearing on his post-conviction application. He has yet to present anything beyond conclusory assertions that the tape was altered in any way. Bold and conclusory claims, unsupported by any facts in the record, do not merit a hearing or any further proceedings. U.S. v. Edwards, 442 F.3d 258 n.10 (5th Cir. 2006); Johnson v. Scott, 68 F.3d 106, 112 (5th Cir.1995). Furthermore, Petitioner has not articulated any information that was allegedly deleted from the tape that would cast doubt on the reliability of the verdict.

**Effective Assistance: Responsive Verdict**

Petitioner argued on his direct appeal that counsel was ineffective for not requesting a jury instruction that listed criminal trespass (a misdemeanor) as a responsive verdict to the charged offense of unauthorized entry of an inhabited dwelling (a felony). The intermediate appellate court rejected the claim on the merits on direct appeal, but the Supreme Court of Louisiana reversed that portion of the decision because the record was insufficient to determine the merits of the claim. State v. Roland, 865 So.2d 692 (La. 2004).

A hearing was held on the issue when it was later presented in a post-conviction application. Defense counsel, a 14-year veteran of the public defender's office, testified that he deliberately chose not to request criminal trespass as a responsive verdict, and the choice was pursuant to his trial strategy. He explained that the strategy was to argue, consistent with

Petitioner's statement to police and his testimony at trial, that he was not guilty on both counts because he had consent or implied consent to enter. Counsel also hoped to pursue the ownership issue. Thus, even if criminal trespass had been a responsive verdict offered by the court to the jury, counsel said that he would not have argued it because it would have been inconsistent with the defense theory. Counsel believed the strategy had worked in part because Petitioner was found not guilty of the second count. Tr. 2033-43. Petitioner testified at the hearing that he asked counsel if there were any lesser included offenses or if counsel could get him a deal on a misdemeanor offense, and he claimed that counsel said no. Tr. 2045-48.

The trial judge ruled from the bench that defense counsel had a "well thought out strategy and an ethical obligation not to present any fraudulent defenses to the jury" in the case. The court expressed concern that it might not have been ethical for counsel to pursue the criminal trespass responsive verdict while simultaneously arguing a consent defense. Based on a totality of the circumstances, the trial court found that defense counsel rendered competent service. Tr. 2051-52. The appellate court held that the record of the hearing "clearly supports" the trial court's denial of the claim "because the responsive verdict of trespass would have been contrary to defense trial counsel's well-thought-out trial strategy." Considering the deference that must be afforded trial counsel in the exercise of reasonable professional judgment, the claim was denied. Tr. 2200. The Supreme Court of Louisiana denied a writ application. Tr. 2472.

Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was deficient only if he made errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. 104 S.Ct. at 2068.

The test for habeas purposes is not whether a petitioner made the showing required under Strickland. The test is whether the state court's decision – that the petitioner did not make the Strickland showing – was contrary to, or an unreasonable application of, the standards provided by Strickland's clearly established federal law. Williams v. Taylor, 120 S.Ct. 1495 (2000); Henderson v. Quarterman, 460 F.3d 654, 665 (5th Cir. 2006).

Reasonable attorneys might debate amongst themselves whether counsel was wisest to pursue not guilty verdicts based on consent (which strategy prevailed on one count) or whether it would be wiser to risk undermining that strategy by presenting an alternative lesser verdict of criminal trespass. Any argument for the alternative verdict would contradict the principal strategy, but if a misdemeanor conviction could be gained it would avoid the serious sentences imposed under the habitual offender laws for persons who commit multiple felonies. Counsel's testimony shows that he took these factors into consideration and elected

the strategy that he thought best. The state court found no <u>Strickland</u> error stemming from that decision. The courts must accord substantial deference to counsel's performance, applying the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."<u>Strickland</u>, 104 S.Ct. at 2065. This is a classic case of deferring to counsel's strategic decisions. The state courts did so, and this court cannot say that their decision was so wrong as to be an objectively unreasonable application of the principles found in <u>Strickland</u>.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**, and that Petitioner's complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of March, 2009.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE